**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| MARK VERBA,                                )<br>                    Petitioner,         )<br>                                           )<br>          v.                               )<br>                                           )<br>C. WOFFORD, Warden,                        )<br>                                           )<br>                    Respondent.            )<br>_____)| NO. CV 14-5679 (AS)<br><br>**OPINION AND ORDER ON A PETITION**<br><br>**FOR WRIT OF HABEAS CORPUS** |

**I.**

**INTRODUCTION**

On July 22, 2014, Mark Verba ("Petitioner"), proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254, and on July 15, 2015, Petitioner filed the pending First Amended Petition ("FAP") (Docket Nos. 1, 29). On October 2, 2015, Respondent filed an Answer with an accompanying Memorandum of Points and Authorities ("Ans. Mem."). (Docket No. 35). Petitioner filed a Reply on October 27, 2015. (Docket No. 39). The parties have

consented to proceed before the undersigned United States Magistrate Judge.  (Docket Entry Nos. 3, 12-13).

For the reasons discussed below, the Petition is DENIED and this action is DISMISSED with prejudice.

## II.
### PRIOR PROCEEDINGS

On July 12, 2011, a Los Angeles County Superior Court jury found Petitioner guilty of one count of failing to register as a sex offender in violation of California Penal Code ("P.C.") § 290(b).  (Clerk's Transcript ("CT") 74-76; Reporter's Transcript ("RT") 964-66).  On August 10, 2011, the trial court sentenced Petitioner to four years in state prison.  (CT 91-94; RT 1511-12).

Petitioner appealed his conviction and sentence to the California Court of Appeal, which affirmed the judgment in a published opinion filed October 31, 2012. <u>People v. Verba</u>, 210 Cal. App. 4th 991 (2012); (Lodgments 2-5).  Petitioner then filed a petition for review in the California Supreme Court, which denied the petition on February 13, 2013.  (Lodgments 6-7).

On or about June 26, 2012, Petitioner filed a habeas corpus petition in the Los Angeles County Superior Court, which was denied on August 31, 2012.  (Lodgments 8-9).  Petitioner then filed a habeas corpus petition in the California Court of Appeal, which denied the

petition without prejudice on March 21, 2013, so that Petitioner could file a new petition in the Superior Court. (Lodgments 10-11).

Effective April 29, 2013, Petitioner filed a second habeas corpus petition in the Los Angeles County Superior Court, which was denied on June 4, 2013. (Lodgments 12-13). Petitioner thereafter filed a habeas corpus petition in the California Court of Appeal, which was denied on June 18, 2013. (Lodgments 14-15). Petitioner then sought habeas corpus relief in the California Supreme Court, which denied his petition on December 11, 2013. (Lodgments 16-17).

Finally, on April 30, 2015, Petitioner filed a second habeas corpus petition in the California Supreme Court, which denied the petition on June 24, 2015, with citation to In re Clark, 5 Cal. 4th 750, 767-69 (1993). (Lodgments 21-22).

### III.

### PETITIONER'S CLAIMS

Petitioner raises the following claims for federal habeas relief:[1]

Ground One:    Petitioner received ineffective assistance of counsel when his trial counsel: (a) failed to raise

---

[1] On January 9, 2015, the Court issued an Order dismissing Grounds Two (jury misconduct) and Four (insufficient evidence) of the initial Petition with prejudice because these claims had been procedurally defaulted. (See Docket No. 23). Petitioner's FAP labels his claims in a manner consistent with the claims raised in his initial Petition, but notes that Grounds Two and Four have been deleted as separate constitutional issues. (See FAP, Att. at 16, 19).

a "human error" defense; (b) dissuaded Petitioner from testifying in his own defense; (c) did not challenge the sufficiency of the evidence; and (d) failed to timely object to jury misconduct.

Ground Three:   Petitioner's conviction was obtained as the result of false testimony.

Ground Five:   The prosecutor committed misconduct by misstating the law and arguing facts not in evidence.

Ground Six:   The sex offender registration statute is unconstitutionally vague.

Ground Eight:[2]   Petitioner received ineffective assistance when his appellate counsel failed to raise even a single substantial allegation of error that might arguably have resulted in a reversal.

(FAP at 5-6 & Attachment ("Att.") at 1-30).

\\

\\

\\

---

[2]   The Court omits and will not further address Ground Seven, which Petitioner calls "Per Se Prejudicial Errors," because Ground Seven does not raise a separate constitutional claim but instead discusses the difference between structural and trial errors in habeas analysis. (See FAP, Att. at 24-25).

4

1

**IV.**

2

**STANDARD OF REVIEW**

3

4          The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

5     "bars relitigation of any claim 'adjudicated on the merits' in state

6     court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."

7     Harrington v. Richter, 562 U.S. 86, 98 (2011).   Under AEDPA's

8     deferential standard, a federal court may grant habeas relief only if

9     the state court adjudication was contrary to or an unreasonable

10    application of clearly established federal law or was based upon an

11    unreasonable determination of the facts.   28 U.S.C. § 2254(d).   "This

12    is a 'difficult to meet' and 'highly deferential standard for

13    evaluating state-court rulings, which demands that state-court

14    decisions be given the benefit of the doubt[.]'"   Cullen v. Pinholster,

15    563 U.S. 170, 181 (2011) (citations omitted).

16

17          Respondent contends that Grounds Three and Five are untimely and

18    procedurally barred and that part of Ground One is also procedurally

19    barred.   (Answer at 1; Ans. Mem. at 8-16).   However, the Court will not

20    address these issues since the Court retains the discretion to address

21    and deny claims on the merits even if the claims are alleged to be

22    untimely, see Cooper v. Calderon, 274 F.3d 1270, 1275 n.3 (9th Cir.

23    2001) (per curiam) (denying petition on merits rather than remanding to

24    consider equitable tolling); Van Buskirk v. Baldwin, 265 F.3d 1080,

25    1083 (9th Cir. 2001) (Court may properly deny petition on merits rather

26    than reaching "the complex questions lurking in the time bar of the

27    AEDPA."), or procedurally defaulted.   See Flournoy v. Small, 681 F.3d

28    1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the issue

5

of procedural bar prior to any consideration of the merits on habeas review, we are not required to do so when a petition clearly fails on the merits."); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should, reach the merits of habeas petitions if they are . . . clearly not meritorious despite an asserted procedural bar."). Rather, the Court addresses these claims de novo. See Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review"); Norris v. Morgan, 622 F.3d 1276, 1290 (9th Cir. 2010) (affirming denial of habeas corpus petition when claim failed even under de novo review); Frantz v. Hazey, 533 F.3d 724, 735-37 (9th Cir. 2008) (en banc) (a federal habeas court can review constitutional issues de novo before performing a § 2254(d)(1) analysis). The Court will also address the remainder of Petitioner's claims de novo since Petitioner's claims fail under any standard of review.[3] Berghuis, 560 U.S. at 390; Norris, 622 F.3d at 1290; Frantz, 533 F.3d at 735-37.

\\

\\

\\

\\

---

[3] Petitioner raised his claims in two habeas corpus petitions to the California Supreme Court, one of which the California Supreme Court denied without comment or citation to authority, and the second of which the California Supreme Court denied on procedural grounds. (Lodgments 16-17, 21-22). Since Petitioner's claims fail even de novo review, the Court will not further parse Petitioner's state habeas corpus petitions to determine which petitions raise which claims.

6

**V.**

**DISCUSSION**

**A.   Prosecutorial Misconduct**[4]

Prosecutorial misconduct rises to the level of a constitutional violation only where it "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Smith v. Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").  Determining whether a due process violation occurred requires an examination of the entire proceedings so the prosecutor's conduct may be placed in its proper context.  Boyde v. California, 494 U.S. 370, 384-85 (1990); Greer v. Miller, 483 U.S. 756, 765-66 (1987).  Moreover, "[p]rosecutorial misconduct which rises to the level of a due process violation may provide the grounds for granting a habeas petition only if that misconduct . . . 'had substantial and injurious effect or influence in determining the jury's verdict.'"  Shaw v. Terhune, 380 F.3d 473, 478 (9th Cir. 2004) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

Petitioner raises two claims of alleged prosecutorial misconduct. In Ground Three, Petitioner contends the prosecutor presented false

---

[4]   To more coherently address Petitioner's claims, the Court addresses them non-sequentially.

evidence. (FAP, Att. at 17-19). In Ground Five, Petitioner asserts the prosecutor committed misconduct by arguing facts not in evidence and misstating the law during closing argument. (Id. at 19-21).

### 1.  False Testimony (Ground Three):

Petitioner was previously convicted of a sex offense and was required, pursuant to P.C. § 290, to register as a sex offender within five working days of changing his address as well as within five working days of his birthday every year.[5] (RT 322-24). Law enforcement agencies use a specific form – Form 8102 – to register sex offenders. (RT 325). Los Angeles Police Department ("LAPD") Officer Marissa Ibanez testified that on April 13, 2010, she met with Petitioner and completed Form 8102 for him because Petitioner indicated he was moving to Long Beach within two days.[6] (RT 648-52). Officer Ibanez also told Petitioner he was required to register with the Long Beach Police Department. (RT 654). In Ground Three, Petitioner asserts that Officer Ibanez's testimony was false, and the prosecution's presentation of this evidence deprived him of due process of law. (FAP, Att. at 17-19).

_____

[5]  Petitioner was born on April 4, 1957. (RT 325).

[6]     This was considered a notice of relocation and not a registration. (RT 326, 356). However, Officer Ibanez stated she did not realize that her meeting with Petitioner was close to his birthday and that, if she had done so, she would have checked the box on Form 8102 indicating that it was an annual update and she also would have warned Petitioner about being late to register. (RT 651-52).

A "conviction obtained by the [prosecutor's] knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976) (footnotes omitted); see also Giglio v. United States, 405 U.S. 150, 153 (1972) ("[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"); Miller v. Pate, 386 U.S. 1, 7 (1967) ("[T]he Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence."); Napue v. Illinois, 360 U.S. 264, 269 (1959) ("[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment[.]"). Moreover, "[a] prosecutor . . . has a constitutional duty to correct evidence he or she knows is false, even if it was not intentionally submitted." Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002); Napue, 360 U.S. at 269; Hayes v. Brown, 399 F.3d 972, 978 (9th Cir. 2005) (en banc). "To prevail on a [false evidence] claim, 'the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony [or evidence] was actually false, and (3) that the false testimony [or evidence] was material.'" Hein v. Sullivan, 601 F.3d 897, 908 (9th Cir. 2010); Napue, 360 U.S. at 269.

Petitioner alleges that Officer Ibanez's testimony that he told her that he was moving out of the jurisdiction to Long Beach "was simply not true." (FAP, Att. at 17). Rather, Petitioner claims he informed Ibanez he might occasionally spend the night with friends in Long

9

Beach, and that is why he provided her with the Long Beach address. (Id. at 17-18). Petitioner, however, has not shown that Officer Ibanez testified falsely or that the prosecutor knew or should have known about the alleged false testimony, and his "cursory and vague claim cannot support habeas relief."[7] Greenway v. Schriro, 653 F.3d 790, 804 (9th Cir. 2011); see also Cook v. Schriro, 538 F.3d 1000, 1017-18 (9th Cir. 2008) (rejecting perjured testimony claim when "there is no real evidence that [the witness'] testimony was false"); Allen v. Woodford, 395 F.3d 979, 995 (9th Cir. 2004) (rejecting perjured testimony claim when the petitioner "fail[ed] to establish either that [the witness'] testimony was false or that the State had any reason to believe it was false."); Mancuso, 292 F.3d at 957 (rejecting false evidence claim when there was "no evidence in this case that the prosecutor presented false testimony"); United States v. Sherlock, 962 F.2d 1349, 1364 (9th Cir. 1992) (rejecting prosecutorial misconduct claim when "[t]he record does not show . . . the prosecutor used false testimony").

\\

\\

\\

---

[7] Petitioner also notes that Officer Robert Greenbaum testified at the preliminary hearing that Officer Ibanez "did not say that she actually remembered who [Petitioner] was by [his] picture[,]" which Petitioner claims impeaches Ibanez's testimony. (FAP, Att. at 18; see also RT 680-82). However, it is not clear how this is so. Officer Ibanez identified Petitioner at trial based on her meeting with Petitioner. (RT 648). Moreover, Officer Ibanez testified she might have told Officer Greenbaum that she did not remember Petitioner from his picture. (RT 658). In short, Petitioner's claim is without merit since he has "failed to show that [Officer Ibanez's] testimony was 'actually false' or that the government knowingly presented false testimony." United States v. Houston, 648 F.3d 806, 814 (9th Cir. 2011).

**2.   Closing Argument (Ground Five):**

"A prosecutor's misleading and inflammatory arguments may violate a defendant's due process right to a fair trial." <u>Sechrest v. Ignacio</u>, 549 F.3d 789, 807 (9th Cir. 2008).  However, "'[i]mproper argument does not, per se, violate a defendant's constitutional rights.'" <u>Runningeagle v. Ryan</u>, 686 F.3d 758, 781 (9th Cir. 2012) (citation omitted); <u>Mancuso</u>, 292 F.3d at 957.  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." <u>Darden</u>, 477 U.S. at 181 (internal quotation marks omitted); <u>Runningeagle</u>, 686 F.3d at 781.  Rather, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden</u>, 477 U.S. at 181 (citation omitted).

In Ground Five, Petitioner asserts that the prosecutor committed misconduct when he argued facts not in evidence and misstated the law during closing argument.  (FAP, Att. at 19-21).

*a.   Facts Not in Evidence*

During closing argument, the prosecutor stated, "Again, exactly why we require sex offenders to register [is] so we can find them.  Rate of recidivism for sex offenders is high.  That is part of the reason for [P.C. § 290].  We want to know where they are." (RT 931).  Defense counsel objected that this argument referred to facts not in evidence, but the trial court overruled the objection.  (<u>Id.</u>).  Petitioner contends that the prosecutor committed misconduct when he referred to

the high rate of recidivism for sex offenders since no such facts were introduced into evidence.  (FAP, Att. at 19-20).

A prosecutor may not misstate the evidence or refer to facts not in evidence during closing argument.  <u>Darden</u>, 477 U.S. at 181-82; <u>United States v. Hermanek</u>, 289 F.3d 1076, 1101 (9th Cir. 2002).  However, "[c]ounsel are entitled to reasonable latitude in closing argument, including references . . . to matters within the common knowledge of all reasonable people."  <u>United States v. Candelaria</u>, 704 F.2d 1129, 1132 (9th Cir. 1983); <u>see</u> <u>also</u> <u>Tenorio v. United States</u>, 390 F.2d 96, 99 (9th Cir. 1968) ("Counsel are entitled to a reasonable degree of latitude in the presentation of argument, and the prosecutor's comment . . . contained nothing more than that which is within the common knowledge of all reasonable people.").

Here, Respondent contends that "reasonably informed individuals are likely aware that sex offenders frequently reoffend."  (Ans. Mem. at 31).  Regardless of whether Respondent is correct, Petitioner is not entitled to relief.  The prosecutor's brief statement about the reasons for requiring sex offenders to register was an isolated comment in a closing argument that spanned 18 pages of the trial transcript.  <u>See Donnelly</u>, 416 U.S. at 645 (prosecutor did not violate the petitioner's constitutional rights where misconduct "was but one moment in an extended trial"); <u>Trillo v. Biter</u>, 769 F.3d 995, 1002 (9th Cir. 2014) (Trillo was not entitled to habeas corpus relief when "[t]he erroneous unrectified comment did not play a prominent role in Trillo's trial, but instead was a single statement during a closing argument that took twenty pages of transcript after a long criminal trial.").  Moreover,

12

the prosecutor's comment was immaterial to the charges against
Petitioner. <u>See</u> <u>United States v. Toomey</u>, 764 F.2d 678, 681 (9th Cir.
1985) ("Even if the prosecutor's statement is characterized as stating
facts not in evidence, the error was harmless in this case [since the
comment] is immaterial to the charges against Toomey."). Furthermore,
the trial court specifically instructed the jury that it was "to decide
what happened based only on the evidence that has been presented . . .
in this trial[,]" and that "[n]othing that the attorneys say is
evidence[,]" including the attorneys' remarks in opening and closing
argument. (RT 902-03, 906; CT 47, 51). The "jury is presumed to
follow its instructions[,]" <u>Weeks v. Angelone</u>, 528 U.S. 225, 234
(2000); <u>Blueford v. Arkansas</u>, 132 S. Ct. 2044, 2051 (2012), and
Petitioner has provided the Court with "no reason to believe that the
jury in this case was incapable of obeying the [trial court's]
instructions." <u>Greer</u>, 483 U.S. at 766 n.8; <u>see also Boyde</u>, 494 U.S. at
384 ("[A]rguments of counsel generally carry less weight with a jury
than do instructions from the court."); <u>Drayden v. White</u>, 232 F.3d 704,
713-14 (9th Cir. 2000) (finding no due process violation where jury was
similarly instructed). Under these circumstances, the Court "cannot
say that prosecutorial misconduct deprived [Petitioner] of a fair
trial." <u>Sassounian v. Roe</u>, 230 F.3d 1097, 1107 (9th Cir. 2000); <u>Hall
v. Whitley</u>, 935 F.2d 164, 165-66 (9th Cir. 1991) (<u>per curiam</u>).


     *b.  Misstatement of the Law*


   During closing argument, the prosecutor stated:

13

If a person is dead, probably not going to be an issue for trial.  If they are in custody, if they have been kidnapped, if they are in a coma, their failure to register is not willful. [¶]  Now, [if] it is just hard to get down there, that's still a willful violation.  They know they have this obligation and they didn't do it.

(RT 929-30).  On rebuttal, the prosecutor argued:

Defense counsel says [Petitioner] did the best he could. That's not what the law requires.  This isn't gym class.  This is registration as a sex offender.  You talk about willful. Willful is a legal standard.  [Defense counsel] knows that. The next step for a willful act is what we call strict liability.  In other words, you do something you are liable for it, even if it is not your fault.  In criminal law we almost never have strict liability. . . .  [¶]  Willful simply means it was your fault or someone else's.  If [Petitioner] went to register and Officer Greenbaum slammed the door in [his] face and said get out, don't come back.  I'll shoot you.  Not his fault.  Is that extreme?  Yes.  But the bottom line is we're looking at, did he do it willingly or on purpose.  I haven't gotten my car washed.  I've been busy.  Do I have [a] reason for not getting it washed?  Yes.  But ultimately, could I have if I really chose to?  Yes.  There was nothing stopping me, aside from the fact I have been busy?  No.  Is it anyone's fault but mine?  Absolutely not.  That is what willful means.

(RT 951).  Petitioner argues that the prosecutor's arguments misstate the law regarding willfulness.  (FAP, Att. at 20-21).

"Obviously, a 'prosecutor should not misstate the law in closing argument.'"  United States v. Moreland, 622 F.3d 1147, 1162 (9th Cir. 2010) (quoting United States v. Berry, 627 F.2d 193, 200 (9th Cir. 1980)).  Petitioner, however, has not shown that the prosecutor misstated the law.  The jury was instructed that "[s]omeone commits an act willfully when he or she does it willingly or on purpose."[8]  (RT 918; CT 66); see also People v. Garcia, 25 Cal. 4th 744, 752 (2001) ("The word 'willfully' implies a 'purpose or willingness' to make the omission.").  Nothing in the prosecutor's argument misstates this definition.  To the contrary the prosecutor specifically argued that "the bottom line is we're looking at, did he do it willingly or on purpose."  (RT 951).  Therefore, there is no factual basis for Petitioner's claim, and he is not entitled to habeas corpus relief. See Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000) (factually unfounded argument provides no basis for federal habeas relief).

## B.  Void for Vagueness (Ground Six)

Petitioner was convicted of failing to register as a sex offender in violation of P.C. § 290(b), which provides, in relevant part, that:

---

[8]  In addition to proving the defendant acted willfully, the prosecution was also required to prove, inter alia, that Petitioner actually knew he had a duty to register as a sex offender, see People v. Garcia, 25 Cal. 4th 744, 752 (2001) (A "violation of section 290 requires actual knowledge of the duty to register."), and the jury was so instructed.  (CT 66; RT 917).  The prosecutor discussed this point with the jury as well.  (See, e.g., RT 922).

> Every person [required to register as a sex offender], for the
> rest of his or her life while residing in California, or while
> attending school or working in California, . . . shall be
> required to register with the chief of police of the city in
> which he or she is residing, or the sheriff of the county if he
> or she is residing in an unincorporated area or city that has
> no police department, . . . within five working days of coming
> into, or changing his or her residence within, any city,
> county, or city and county . . . and shall be required to
> register thereafter in accordance with the Act.

P.C. § 290(b) (2010). (CT 74). "'Residence' means one or more
addresses at which a person regularly resides, regardless of the number
of days or nights spent there, such as a shelter or structure that can
be located by a street address, including, but not limited to, houses,
apartment buildings, motels, hotels, homeless shelters, and
recreational and other vehicles."[9] P.C. § 290.011(g) (2010). In Ground
Six, Petitioner challenges his conviction, arguing that the term
residence is unconstitutionally vague.[10] (FAP, Att. at 21-23).

"It is a fundamental tenet of due process that '[n]o one may be
required at peril of life, liberty or property to speculate as to the
meaning of penal statutes.'" United States v. Batchelder, 442 U.S.

---

[9] The jury was instructed with this definition of residence. (CT
66; RT 918).

[10] Petitioner also complains that the word "location" is vague but
the statute does not contain this word; therefore, the Court will not
address this argument.

114, 123 (1979) (quoting <u>Lanzetta v. New Jersey</u>, 306 U.S. 451, 453 (1939)).  To satisfy due process, a criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983); <u>Batchelder</u>, 442 U.S. at 123; <u>Cavitt v. Cullen</u>, 728 F.3d 1000, 1005 (9th Cir. 2013), <u>cert. denied</u>, 134 S. Ct. 1522 (2014).

Petitioner's contention does not require extensive comment.  The term "residence" as defined in the statute is not unconstitutionally vague since a reasonable person of ordinary intelligence would understand what the statute prohibits.  <u>United States v. J.D.T.</u>, 762 F.3d 984, 999 (9th Cir. 2014) ("'A criminal statute is not vague if a reasonable person of ordinary intelligence would understand what conduct the statute prohibits.'" (citation omitted)), <u>cert. denied</u>, 136 S. Ct. 400 (2015); <u>White v. Dexter</u>, 403 F. App'x 271, 271-72 (9th Cir. 2010) (affirming conclusion that similar definition of "residence" in P.C. § 290(b) was not unconstitutionally vague); <u>People v. Gonzales</u>, 183 Cal. App. 4th 24, 39 (2010) ("The definition of 'residence' adopted in section 290.011(g) is consistent with th[e] definition of the common meaning of residence.  Thus it is reasonably certain to provide offenders and law enforcement with notice of the statutory registration requirements, when considered in context with other terms, and is adequate in view of the legislative purpose of allowing 'local law enforcement agencies to keep known sex offenders under surveillance.'" (citations omitted)).

17

1    **C.   <u>Ineffective Assistance of Counsel</u> (Ground One)**

2

3         In  Ground  One,  Petitioner  alleges  he  received  ineffective

4    assistance  of  counsel  when  his  trial  counsel:  (a)  failed  to  raise  a

5    "human  error"  defense;  (b)  dissuaded  Petitioner  from  testifying  in  his

6    own  defense;  (c)  did  not  challenge  the  sufficiency  of  the  evidence;  and

7    (d)  failed  to  timely  object  to  jury  misconduct.[11]  (FAP,  Att.  at  9-16).

8    In  Ground  Eight,  Petitioner  asserts  he  received  ineffective  assistance

9    of  counsel  when  his  appellate  counsel  failed  to  raise  even  a  single

10   substantial  allegation  of  error  that  might  have  resulted  in  reversal.

11   (FAP,  Att.  at  25-29).

12

13        **1.   Trial Counsel**

14

15        "The  Sixth  Amendment  guarantees  criminal  defendants  the  effective

16   assistance  of  counsel."  <u>Yarborough v. Gentry</u>,  540  U.S.  1,  4  (2003)

17   (<u>per</u> <u>curiam</u>); <u>see also</u> <u>Missouri v. Frye</u>,  132  S. Ct.  1399,  1404  (2012)

18   ("The  right  to  counsel  is  the  right  to  effective  assistance  of

19   counsel.").   To  succeed  on  an  ineffective  assistance  of  trial  counsel

20   claim,  Petitioner  must  demonstrate  both  that  counsel's  performance  was

21   deficient  and  that  the  deficient  performance  prejudiced  the  defense.

22   <u>Strickland v. Washington</u>,  466  U.S.  668,  687  (1984);  <u>see  also</u>

23

24        [11]  Petitioner  also  asserts  in  Ground  One  that  the  "trial  court's
25   failure  to  instruct  on  the  actual  knowledge  requirement  [of  P.C. § 290]
     resulted  in  prejudicial  error."  (FAP, Att. at 13).   This  argument  is
26   specious.   As  noted  above,  the  trial  court  specifically  instructed  the
     jury  that  the  prosecution  was  required  to  prove  that  Petitioner
27   "actually  knew  he  had  a  duty  under  [P.C. §]  290  to  register  as  a  sex
     offender  within  five  days  of  changing  his  residence[.]"  (RT 917; CT
28   66).

                                          18

<u>Pinholster</u>, 563 U.S. at 189 (<u>Strickland</u> standard is clearly established federal law). "'To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" <u>Richter</u>, 562 U.S. at 104 (citation omitted); <u>Premo v. Moore</u>, 562 U.S. 115, 121 (2011). Prejudice "focuses on the question whether counsel's deficient performance renders the results of the trial unreliable or the proceeding fundamentally unfair." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372 (1993); <u>Williams v. Taylor</u>, 529 U.S. 362, 393 n.17 (2000). That is, Petitioner must establish there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" <u>Strickland</u>, 466 U.S. at 694; 563 U.S. at 189, and "[t]he likelihood of a different result must be substantial, not just conceivable." <u>Richter</u>, 562 U.S. at 112; <u>Pinholster</u>, 563 U.S. at 189. Petitioner bears the burden of establishing both components. <u>Williams</u>, 529 U.S. at 390-91; <u>Strickland</u>, 466 U.S. at 687. However, the Court need not determine whether counsel's performance was deficient before examining the prejudice the alleged deficiencies caused Petitioner. <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 286 n.14 (2000) ("'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" (quoting <u>Strickland</u>, 466 U.S. at 697)).

a.   Failure to Raise a Defense

In Ground One(a), Petitioner asserts that defense counsel failed to raise a "human error" defense, which Petitioner describes as "the defense that the law enforcement official whose duty it was to

19

correctly enter . . . [P]etitioner's registration information on the form did so incorrectly, which resulted in the false or misleading charge being filed and then provided false testimony which was ultimately impeached." (FAP, Att. at 10). In other words, Petitioner asserts that his defense counsel should have argued that Officer Ibanez lied when she testified that Petitioner told her on April 13, 2010, that he was moving to Long Beach in two days. However, Petitioner has presented absolutely no evidence to support his defense apart from his own self-serving statements, which are plainly insufficient to warrant habeas corpus relief. See Womack v. Del Papa, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting ineffective assistance of counsel claim when "[o]ther than Womack's own self-serving statement, there is no evidence" to support the claim); Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002) ("'[S]elf-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions.'" (citation omitted)).

b.    Dissuading Petitioner from Testifying

In Ground One(b), Petitioner alleges defense counsel dissuaded him from testifying. (FAP, Att. at 10).

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987); Gill v. Ayers, 342 F.3d 911, 919 (9th Cir. 2003). This right has its sources in several constitutional provisions, including the Fourteenth Amendment's Due Process Clause, the Sixth

20

Amendment's Compulsory Process Clause, and as a "necessary corollary to the Fifth Amendment's guarantee against compelled testimony." <u>Rock</u>, 483 U.S. at 51-52; <u>United States v. Pino-Noriega</u>, 189 F.3d 1089, 1094 (9th Cir. 1999). "The right is personal, and 'may only be relinquished by the defendant, and the defendant's relinquishment of the right must be knowing and intentional.'" <u>Pino-Noriega</u>, 189 F.3d at 1094 (quoting <u>United States v. Joelson</u>, 7 F.3d 174, 177 (9th Cir. 1993)).

However, "waiver of the right to testify . . . need not be explicit." <u>Pino-Noriega</u>, 189 F.3d at 1094; <u>Joelson</u>, 7 F.3d at 177. Rather, "waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so." <u>Joelson</u>, 7 F.3d at 177; <u>Pino-Noriega</u>, 189 F.3d at 1095. "A defendant who wants to reject his attorney's advice and take the stand may do so 'by insisting on testifying, speaking to the court, or discharging his lawyer.'" <u>Pino-Noriega</u>, 189 F.3d at 1095 (quoting <u>Joelson</u>, 7 F.3d at 177). "When a defendant remains 'silent in the face of his attorney's decision not to call him as a witness,' he waives the right to testify," <u>Pino-Noriega</u>, 189 F.3d at 1095 (citation omitted), or claim ineffective assistance of counsel due to his counsel's failure to call him as a witness. <u>United States v. Nohara</u>, 3 F.3d 1239, 1244 (9th Cir. 1993); <u>McElvain v. Lewis</u>, 283 F. Supp. 2d 1104, 1117 (C.D. Cal. 2003).

Here, after the prosecution rested, the defense indicated that the

21

only witness she would be calling was Officer Greenbaum.[12]  (RT 670).

When defense counsel rested the defense without calling Petitioner as

a witness, Petitioner did not insist on testifying in his own defense

or otherwise advise the trial court he disagreed with defense counsel's

decision.[13]  (RT 682).  As such, Petitioner waived his right to testify,

Pino-Noriega, 189 F.3d at 1095, and cannot now claim ineffective

assistance of counsel due to his trial counsel's failure to call him as

a witness.  Nohara, 3 F.3d at 1244; McElvain, 283 F. Supp. 2d at 1117.

            c.   Failure to Challenge the Sufficiency of the Evidence

    In Ground One(c), Petitioner asserts that he received ineffective

assistance of counsel when his trial counsel did not challenge the

sufficiency of the evidence against him.  However, this is incorrect.

 At the close of the prosecution's case, defense counsel moved for a

judgment of acquittal pursuant to P.C. § 1118.1,[14] arguing the

---

    [12]  Dr. Paul Bronston had testified as a defense witness before the
prosecution rested.  (RT 601-40).

    [13]  This is not entirely surprising as the trial court had made it
clear that if Petitioner testified, the prosecution could impeach him
with at least some of his prior convictions for lewd and lascivious
acts on a child in violation of P.C. § 288(a).  (RT 12-15).

    [14]  P.C. § 1118.1 states, in pertinent part:

       In a case tried before a jury, the court on motion of the
       defendant or on its own motion, at the close of the evidence
       on either side and before the case is submitted to the jury
       for decision, shall order the entry of a judgment of
       acquittal of one or more of the offenses charged in the
       accusatory pleading if the evidence then before the court is
       insufficient to sustain a conviction of such offense or
       offenses on appeal.

22

prosecution had presented no evidence to show that Petitioner had willfully failed to register as a sex offender. (RT 669). The trial court disagreed, stating "I believe there has been sufficient evidence to survive the [P.C. §] 1118.1 motion, and the motion will be denied." (RT 670). Therefore, Petitioner's contention that his defense counsel failed to challenge the sufficiency of the evidence against him is factually unfounded. <u>Dows</u>, 211 F.3d at 486-87.

To the extent Petitioner's claim can be read as alleging that defense counsel was ineffective in not raising any other challenge to the sufficiency of the evidence against Petitioner, it is without merit. (<u>See</u> FAP, Att. at 12-14).

To convict Petitioner of failing to register as a sex offender in violation of P.C. § 290(b), the prosecution was required to prove that Petitioner (1) was previously convicted of a sex offense requiring registration pursuant to P.C. § 290; (2) resided in Los Angeles, California; (3) actually knew he had a duty under P.C. § 290 to register as a sex offender within five days of changing his residence; and (4) willfully failed to register as a sex offender with the local police agency where he was residing within five working days of coming into or changing his residence within that jurisdiction. (CT 66; RT 917-18). "Someone commits an act willfully when he or she does it willingly or on purpose." (RT 918; CT 66).

Here, Petitioner stipulated that he had been convicted of a felony sex offense requiring registration as a sex offender pursuant to P.C. § 290. (RT 322). Petitioner also stipulated that he was officially

23

notified of his duty to register as a sex offender on November 6, 2003, and January 13, 2004, that he registered with the LAPD from January 13, 2004, through October 1, 2009, with the 2009 registration reflecting an address of 12836 Hubbard Street in Sylmar, California, and that at the time of each registration Petitioner would have been required to read and understand admonitions regarding his duty to register as a sex offender. (RT 325-26). Petitioner further stipulated that on April 13, 2010, the LAPD completed a notice of relocation, which is not considered a registration, and that on May 21, 2010, the Long Beach Police Department completed a registration for Petitioner indicating that Petitioner was residing at 440 Main Street #3 in Long Beach. (RT 326-27).

Additionally, the jury heard testimony that Petitioner moved out of the Hubbard Street address in approximately the middle of February 2010.[15] (RT 330). Officer Ibanez testified that on April 13, 2010, she met with Petitioner, who told her that he was moving to 440 Main Avenue #3 in Long Beach within two days, she completed the requisite form reflecting that Petitioner had moved out of the jurisdiction to the

---

[15] This testimony was provided by David DiGiovanni, who lived at the Sylmar address, which he described as "kind of a halfway house." (RT 328, 330). Petitioner contends that neither DiGiovanni nor Officer Ibanez were reliable witnesses. (FAP Att. at 6-7, 11). However, the Court "'must respect the exclusive province of the [jury] to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts.'" Long v. Johnson, 736 F.3d 891, 896 (9th Cir. 2013) (citation omitted), cert. denied, 134 S. Ct. 2843 (2014); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam) ("[I]t is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial."); Cudjo v. Ayers, 698 F.3d 752, 763 (9th Cir. 2012) ("Supreme Court precedent makes clear that questions of credibility are for the jury to decide.").

Long Beach address, and she also informed Petitioner that he was required to register with the Long Beach Police Department.[16]   (RT 648-54; see also Reply, Exh. A).   Officer Greenbaum testified that on May 6, 2010, he checked the relevant state database, which did not reflect that Petitioner had registered in Long Beach or anywhere else.   (RT 359).   Officer Greenbaum then called Petitioner, who informed Officer Greenbaum that he had been staying with friends due to medical issues, but did not provide any further information about his whereabouts between April 13, 2010, and May 6, 2010.   (RT 360).   Petitioner conceded to Officer Greenbaum that he had not registered anywhere between April 13, 2010, and May 6, 2010.[17]   (RT 360-61).   Officer Greenbaum informed Petitioner he was out of compliance, and Petitioner told Officer Greenbaum that he would take care of the problem within 24 hours.   (RT 361).   Petitioner did not do so, and on May 19, 2010, Officer Greenbaum went to the Hubbard Street address and verified that Petitioner had left.   (RT 361-62).   Officer Hubbard then did a final check of the relevant state database, which showed that Petitioner still had not registered.   (RT 362).

---

[16]   Officer Greenbaum testified that a sex offender completing a notice of relocation is informed that he needs to register in the new jurisdiction within five days of actually moving there.   (RT 357-58).

[17]   Nor did Petitioner register as a transient.   (RT 363); see P.C. § 290.011(b) ("A person registered at a residence address in accordance with [P.C. § 290(b)] who becomes transient shall have five working days within which to reregister as a transient. . . ."); People v. Villegas, 205 Cal. App. 4th 642, 647 (2012) ("[W]henever a person required to register changes addresses, he or she must notify the last registering agency of the move within five working days.   The requirement to give notice of the move applies regardless of whether the registrant knows his or her new address.   The duty to notify the agency within five days is triggered by any change of address or location." (citations omitted)).

Considering the evidence in the light most favorable to the prosecution, this evidence was more than sufficient for the jury to "have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>Ngo v. Giurbino</u>, 651 F.3d 1112, 1114 (9th Cir. 2011) ("'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" (citations omitted)).[18]  Thus, since sufficient evidence supports Petitioner's conviction, Petitioner has not shown defense counsel was ineffective in failing to further challenge the sufficiency of the evidence against him.[19]  <u>See</u> <u>Jones v. Ryan</u>, 691 F.3d 1093, 1101 (9th Cir. 2012) ("It should be obvious that the failure of an attorney to raise a meritless claim is not prejudicial[.]"); <u>Flournoy</u>, 681 F.3d at 1006 (9th Cir. 2012) ("The failure to make an objection that would have been overruled was not deficient performance."); <u>Rupe v. Wood</u>, 93 F.3d 1434, 1444-45 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance."); <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1349 (9th Cir. 1995) ("Counsel was under no obligation to bring a plainly unavailing motion before the

---

[18]  The Court cites the federal sufficiency of the evidence standard since California and federal courts apply the same standards to determine sufficiency of the evidence.  <u>See</u> <u>People v. Staten</u>, 24 Cal. 4th 434, 460 (2000) ("An identical standard [to the <u>Jackson</u> standard] applies under the California Constitution.").  Additionally, the same standard applies to determining motions made pursuant to P.C. § 1118.1.  <u>See</u> <u>People v. Whisenhunt</u>, 44 Cal. 4th 174, 200 (2008) ("The standard applied by the trial court under section 1118.1 in ruling on a motion for judgment of acquittal is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction.").

[19]  Therefore, even if the Court had not dismissed Ground Four of Petitioner's initial habeas corpus petition as procedurally barred, the claim would nevertheless have failed on the merits.

[trial] court."); <u>United States v. Feldman</u>, 853 F.2d 648, 665-66 (9th Cir. 1988) (failure to move for an acquittal due to insufficient evidence does not constitute ineffective assistance when there was sufficient evidence to support the conviction).

### d.   Failure to Object to Alleged Juror Misconduct

In Ground One(d), Petitioner asserts he received ineffective assistance of counsel when his trial counsel failed to timely object to juror misconduct.  In particular, Petitioner complains that during a recess prior to the start of jury deliberations, he observed LAPD Officer Buenaventura in the gallery with jurors, and when the trial court instructed the jurors to return to their seats, Officer Buenaventura smiled and held the door to the jury box open for jurors. (FAP, Att. at 14).  Petitioner alleges he asked defense counsel why Officer Buenaventura was present, and she responded "I don't know." (<u>Id.</u>).

Petitioner's claim fails because it lacks evidentiary support. Petitioner points to no portion of the record demonstrating Officer Buenaventura was even in the courtroom during the trial, let alone that he had any improper contact with jurors.[20]  Petitioner's self-serving allegations simply cannot establish a viable ineffective assistance of counsel claim.  <u>Womack</u>, 497 F.3d at 1004; <u>Turner</u>, 281 F.3d at 881.

---

[20]   Indeed, Petitioner does not even claim that defense counsel observed the alleged jury misconduct, or that he brought the issue to defense counsel's attention.  Asking defense counsel why a police officer is in the courtroom is not the same as informing defense counsel of alleged improprieties.

Absent competent evidence, Petitioner's allegations of juror misconduct are conclusory and insufficient to warrant habeas corpus relief, Greenway, 653 F.3d at 804; see also James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."), and defense counsel cannot be faulted for failing to raise the matter.[21] Jones, 691 F.3d at 1101; Flournoy, 681 F.3d at 1006; Rupe, 93 F.3d at 1444-45.

For all these reasons, Ground One is without merit.[22]

## 2.   Appellate Counsel (Ground Eight)

"[T]he right to effective assistance of counsel is not confined to trial, but extends also to the first appeal as of right." Kimmelman v. Morrison, 477 U.S. 365, 378 n.2 (1986); Evitts v. Lucey, 469 U.S. 387, 396-97 (1985).  The standard for establishing a prima facie claim of ineffective appellate counsel is the same as for trial counsel: Petitioner must show his appellate counsel was deficient and the deficient performance prejudiced him.  Smith v. Robbins, 528 U.S. 259,

---

[21] Even if the Court had not dismissed Ground Two of Petitioner's initial habeas corpus petition as procedurally barred, the claim would nevertheless have failed on the merits.

[22] To the extent Petitioner intends Ground One to raise any claims beyond those discussed herein, such claims are summarily rejected as vague, conclusory, and manifestly insufficient to warrant habeas corpus relief.  Greenway, 653 F.3d at 804; see also Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) (Petitioner's "conclusory suggestion[] that his trial . . . counsel provided ineffective assistance fall[s] far short of stating a valid claim of constitutional violation.").

285, 289 (2000); <u>Strickland</u>, 466 U.S. at 687; <u>Cockett v. Ray</u>, 333 F.3d 938, 944 (9th Cir. 2003).   Moreover, appellate counsel has no constitutional duty to raise every issue, where, in the attorney's judgment, the issue has little or no likelihood of success.   <u>Jones v. Barnes</u>, 463 U.S. 745, 751-53 (1983); <u>Turner</u>, 281 F.3d at 881.   Indeed, as an officer of the court, appellate counsel is under an ethical obligation to refrain from wasting the court's time on meritless arguments.   <u>McCoy v. Wisconsin</u>, 486 U.S. 429, 436 (1988).   Thus, in reviewing appellate counsel's performance, the Court will presume that appellate counsel used reasonable tactics; otherwise, it "could dampen the ardor and impair [counsel's] independence. . . , discourage the acceptance of assigned cases, and undermine the trust between attorney and client."   <u>Pollard v. White</u>, 119 F.3d 1430, 1435 (9th Cir. 1997) (citing <u>Strickland</u>, 466 U.S. at 690).

In Ground Eight, Petitioner contends his appellate counsel was ineffective in failing to raise "even a single substantial allegation of error" that "might arguably have resulted in reversal" of his conviction.   (FAP, Att. at 25-29).   However, Petitioner has not identified a single meritorious claim his appellate counsel failed to raise.   Instead, Petitioner cites claims that, as the Court has already explained, are without merit.   (<u>See</u> <u>id.</u> at 28-29).   As such, appellate counsel did not render ineffective assistance by refraining from raising such claims on appeal.   See <u>Rogovich v. Ryan</u>, 694 F.3d 1094, 1106 (9th Cir. 2012) ("Counsel is not required to raise an 'untenable issue' on appeal." (citations omitted)); <u>Moorman v. Ryan</u>, 628 F.3d 1102, 1109 (9th Cir. 2010) ("Counsel was not required to raise a meritless issue on direct appeal, and there is no reasonable

probability that had counsel raised this claim, the Arizona Supreme Court would have reversed Moormann's conviction."); <u>Turner</u>, 281 F.3d at 872 ("A failure to raise untenable issues on appeal does not fall below the *Strickland* standard."); <u>Wildman v. Johnson</u>, 261 F.3d 832, 840 (9th Cir. 2001) ("[Petitioner] cannot sustain his claim for ineffective assistance of appellate counsel because the issues he raises are without merit").

## VI.

## ORDER

IT IS HEREBY ORDERED that Judgment be entered DENYING the First Amended Petition for Writ of Habeas Corpus and DISMISSING this action with prejudice.

DATED: January 11, 2016

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE